All right. Good afternoon to everyone. I want to note for the record that Mr. Nolan called. He's out of the country and he wanted to participate by telephone. I told the clerk to tell him it wouldn't be necessary because we have other capable counsel from the same firm. And this is only, I think, a hearing in which we're going to only preliminary matters anyway. The main I think the main thing we have to decide, and I have some tentative thoughts on it already, is how to proceed with this case. I asked for I forgot what I call them, some kind of status reports, I guess, or status conference reports. And I have them from from all the parties. My I guess my function, as it says, in the order appointing me as a special master is to decide what further proceedings are necessary and to conduct, if necessary, evidentiary hearings and so forth. Now, what the order doesn't say, which I just noticed today, but I think it's implicit is I'm not going to make a ruling ultimate ruling on this. You know, I think as a special master, it's always been my assumption that I'm supposed to make some kind of a recommendation to the panel. But the order really doesn't say that. So I'm assuming that the case and I'm going to ask the panel to clarify the order. So. So we're all on the same page. But so we'll proceed on the basis that in the tradition of a special master, my function is to hold whatever hearings are necessary, including any pre-hearing proceedings. And then on the basis of whatever is adduced, finally, and the arguments that are made to make a report and recommendation to the to the panel. Now, I understand those matters which are before me are those matters set forth in the original order to show cause issued by the panel, except that the panel itself has already discharged any further proceedings against. Who was that? Mr. Miller. Right. Now, there's a little wrinkle today. I want to call to your attention and you can tell me what this means. I have no idea what the effect of this is. But the clerk has informed me that a search of our records, the Ninth Circuit records, indicates that neither Mr. Girardi nor Mr. Miller has ever been admitted to the bar of this court. I don't know if that if that's true or not. If it's true, it could just be an oversight. I think a lot of people treat admission to this court, you know, most of the formality. I don't know. But I'm going to ask, I think, counsel for Mr. Girardi to, I think, sort of to let the court know what, you know, eventually what the status is and what we should do about it. Because one part of the part of the matter before me is to determine whether or not any discipline should be imposed. Well, I don't think a person was a member of the bar can be disciplined. That's my understanding. I haven't done any research. Also, there is a matter of, I think, sanctions that are before me. And I think, you know, I'm just drawing on my recollection. But I think the only persons who can be sanctioned are either parties or their counsel. Now, I don't know if their counsel includes, you know, lawyers who are not admitted to the bar. I have no idea whether that applies or not. I remember years ago I tried to sanction somebody who was not a lawyer and I got reversed. I remember that. So. But, you know, of course, we all know Mr. Girardi is a lawyer. So that's a matter that I think should be straightened out. I don't know whether, you know, in the meantime, it's a good idea to apply for admission or not. I just I have no thoughts on that. But I leave that up to Mr. Girardi, who himself is a capable counsel and all the capable counsel. He has assisting him. Right. So that's a matter that should be looked into. I think promptly now we don't have a reporter, you know, in the court of appeals, but all of our proceedings are recorded. And it's it's possible to get a recording. Is this right? Can you can take order like a cassette of this or just tape it off the off the Web site? Yeah, you can go you can go on the Web site, you know, and if you want to get a transfer, please make your own. All right. But because there's no reporter, I think if we have an evidentiary hearing, I'm going to conduct further proceedings in the district court and sort of, you know, borrow one of the reporters in one of their courtrooms. I think, you know, I really just set the matter here because one, I was I was I had to be here anyway. And to a number of the council, at least at that time, were from out of town, out of town, not from Los Angeles. So I figured it wouldn't be that much of an inconvenience. I think now looking at this, most council and of course, the parties council are from Southern California. One of the defense councils from Southern California, the other two from, I think. Oh, cities where the transportation to Los Angeles just as convenience of transportation to San Francisco. So I think I'm going to on this for some reason not to schedule all for the proceedings in the in probably in the district court in Los Angeles. All right. I have to, you know, sort of beg for a courtroom and a reporter, but I think I can get one. So you can sort of count on that. Now, what else in the way of preliminary matters? All right. One of the things I think you can think about, maybe you can address is whether or not future proceedings before the special master should be closed. The hearing should be closed. And, you know, the paper sealed because, you know, that's the usual. Usual rule in this disciplinary proceedings until a final order issues that impose a discipline that would, of course, is out of my jurisdiction. But I think whether or not in the papers and proceedings should be sealed, I think is a matter that I should decide. And so you can think about that for a few minutes before I call on you. All right. So the main the main issue then is what for the proceedings we should hold. It's contested now whether or not there ought to be discovery. The defendants believe there should be. The plaintiffs and the I'll call them respondent counsel and law firms believe there shouldn't be. I've read the papers. When I say further proceedings, I mean, I mean, an evidentiary hearing, an evidentiary hearing. And whether or not such a hearing should be preceded by an opportunity for discovery. I've read the papers. Anybody else? Anybody want to be heard orally on this? Go ahead. And when you get to the because, you know, there's no report is being just transcribed. I state your name for the record right before you start speaking. Your Honor, Bob Baker, I represent Mr. Lack, Mr. Trena, Mr. Topp, the Engstrom Lipscomb and Lack firm. As we set forth in our papers, we believe that the procedural trail that got us here in front of you and the record that is was created gives you more than ample evidence on which to decide this issue. It's our view that there really is no issue of law and fact. We don't think that discovery would assist the court in its decision making in its decision making, nor do we believe that the an evidentiary hearing is necessary. If you look at the record, Your Honor, what you'll see and what you have seen from what you've reviewed is that my clients admit that a mistake was made. There's no question about it. They admit it. They admit that they were wrong. They admit that they made the error in judgment. And, you know, most of life is, as one of my colleagues suggested, is lived between things you are proud of and things you are embarrassed by. And the point I'm making is that mistakes are made all the time by lawyers. It happens and it when it occurs, it is maybe sanctionable, but not subject to disciplinary, any disciplinary action whatsoever. These are lawyers who have a history of not being reprimanded in any way, shape or form and have all been around for a very long period of time. We cited at page 13 of our status conference brief Judge Posner's remarks relative to this. And he was of the view that there is no issues that a hearing could illuminate in these type of cases, and that the relevant conduct is laid out in the briefs themselves, that neither the mental state of the attorney nor any other factual issue is pertinent to the imposition of sanctions. And he suggests, and I'm quoting from at the bottom of page 13 and the top of page 14 of our status conference brief, it is simply our view that there is enough information available in the declarations of the clients I represent and Mr. Girardi to, for you to make a recommendation, because we assumed as did you, that your role would be to make a recommendation to the panel. And one thing I think that the court has to understand, and I'm not sure it's in any of the papers, that our clients still represent plaintiffs in these DBCP cases. And the lawyers on the other side of the table from us still represent defendants in these cases. And that could create an enormous problem, both in hearings, discovery, or what have you, relative to all the issues that are tied to that. And so we believe, and if you want us to brief it, we'd be happy to, that these hearings must be closed because of the remarks that you made that this is in the nature of an investigation. And until findings are made that they should be closed and the record, in fact, should be sealed. Thank you, Your Honor. All right. Thank you, Mr. Baker. Anybody else? Yes, Your Honor. Rick McKnight of Jones Day for Dole Food Company. Let me address those two points that Your Honor adverted to. First, the issue of discovery and the appropriateness of discovery as part of the further proceedings. The thrust of Mr. Lack's defense is that he relied on the Nicaraguan professionals. And the thrust of Mr. Girardi's defense is that he relied on Mr. Lack, who relied on the Nicaraguans. And they assert that their conduct shouldn't be subject to discipline because their reliance, though an error of judgment, was reasonable and thus excusable. And if we think about that defense and look at the affidavits, the declarations that have been submitted in open court before both yourself and the Ninth Circuit, we see, and I can cite several examples of where discovery is eminently appropriate. For example, Mr. Lack asserts that Mr. Mejia in Nicaragua told him that the plaintiffs made a motion to amend the judgment because it was wrong and that the court in Nicaragua, in response to that, issued an order that corrected it. Now, that immediately invites questions, both from Your Honor and in discovery. Did Mr. Lack get a copy of this motion that Mr. Mejia asserts was made? Did Mr. Lack get a copy of the order that Mejia asserts was made? Did he ask for that order? Did he ask for that motion? What would Mejia say? Is Mejia going to say when we examine him, oh, I lied about that when I submitted a declaration to the court, that I made such a motion and I had gotten such an order? Did he lie? Who told him to lie in that fashion so that it would provide some support for this enforcement action in the United States? Another example, Your Honor, in the papers that were submitted to the Ninth Circuit, we see that there is a July 11, 2004, translation, affidavit by a translator, Mr. Ballesteros. And that's submitted as Lack Exhibit 1 to the Ninth Circuit in response to the order to show cause. And in that affidavit, Mr. Ballesteros says, I'm a translator and I, not a judge in Nicaragua, but I changed Dole's name to Dole Food Company, Inc. And he not only does it in, this is an odd role for a translator, he not only does it in the Spanish to English version, he does it in the Spanish to Spanish version. So here we have, before the reply brief is submitted to the Ninth Circuit, we have an affidavit that's submitted apparently at Mr. Lack's request, in which the story that had been told previously, that a Nicaraguan court had, in response to a motion, issued an order and changed the judgment and the writ of execution. And then we have a completely contradictory story from Mr. Ballesteros, the translator, who says, hey, I did it, no judge. Now, that is in 2004. The proceedings go forth before the Ninth Circuit and a reply brief is submitted. Now, that invites a number of questions. Who asked for that translator's affidavit? Why did it first see the light of day in response to the sanctions motion and never before? Why was it that Mr. Lack had this translation and persisted in the prosecution of the appeal? Did he then talk to Mejia and Mr. Espinales, who had said a completely contradictory story? At that point, he's clearly on notice. He's got two completely divergent versions of how this notary affidavit comes about. Did he then ask for the order? Did he ask for the translator? Why he changed the Spanish version and changed the name in the Spanish version? Why did he change shell oil to shell chemical? What's the rationale for translating oil into chemical? Who's directing a translator to do that? That's not a translator's function. Somebody is behind that. And all of that invites inquiry to know whether there's any notion of reasonable reliance, whether there was any adequate kicking of the tires and exploration of these issues. I could go on, Your Honor. There are many things, for example, for Mr. Girardi, where Mr. Girardi says, you know, I had an arrangement with Mr. Lack. I was the trial lawyer, and he took care of motions and pleadings. It's an odd arrangement. What trial? This action is an enforcement action after a trial has already taken place in Nicaragua. He, Mr. Girardi, asserts, I knew nothing of this. Well, before the enforcement action was brought, Mr. Girardi met with Dole Food Company, the general counsel of Dole. And the Dole general counsel told him, look, our company is not a named defendant in this judgment. They put him on notice. He is aware at that point. And he's not someone who's passive and can take the willful blindness defense. He, in that conversation, indicates considerable knowledge about the Nicaraguan action, including how the plaintiffs were selected to bring that action down in Nicaragua, that then was being enforced in the United States. There's an action that's brought against those Nicaraguan claimants, a RICO action. It identifies Mr. Girardi and Mr. Lack as members of the enterprise. This is serious allegations. And it lays out very clearly that there's clear indication that this is a fraudulent writ of execution. You're talking about, by the way, you're talking about the state court case, right? It was actually filed in federal court, Your Honor, also before Judge Minella. Well, is this the case where the defendants first got a copy of the original judgment? No. No, that's yet another case. All right. But the interesting thing, just in terms of Mr. Girardi's assertion that I know nothing, is he writes in response to that action, which was a couple years ago, before the prosecution of the appeal, he knows enough at that point, after reading the complaint, one, to put him on notice, and two, to write a letter saying, withdraw that complaint. I'm going to bring malicious prosecution against you for doing it. Now, presumably he doesn't make that assertion if he's blind to the facts. And he further threatens state bar ethics proceedings against our firm. Now, someone doesn't do that if he knows nothing of the facts, not responsibly, not professionally. The same thing occurs when Mr. Girardi, on the day, or the day before, the sanction hearing was being heard by the Ninth Circuit. He tells the L.A. Daily Journal, oh, not only was our position untenable, but Dole is a lying sack of bones. Now, he certainly purports in talking to the press to be knowledgeable of that which he now says he has no knowledge of. Does this invite further inquiry and discovery? Yes, I submit, Your Honor, it does. I have, of course, numerous other examples, but I won't belabor the point. I will say, as to the issue of the closed session or the open session, it is a matter of secondary concern to our clients. But I do note this. It's been a transparent process to date. All of the declarations have been submitted and are in the public record. All of the arguments have been made thus far and are in the public record. The notion of now making it a closed proceeding and having confidential treatment accorded to it, it seems to me, both doesn't, is incongruent with what's gone on. And second, it obviously is an interest for the Ninth Circuit as to how it wishes to conduct matters that regard the policing of the bar. And we would yield, of course, to Your Honor's own judgment on that. But we do note that it has been an open proceeding. And if there are matters that are particularly sensitive, as in any case, we can have a confidentiality order and have some confidential treatment for portions of it without having the burden of an entirely closed proceeding. Thank you, Your Honor. What is the status of these other cases? There are a number of DBCP cases, many of them pending in Nicaragua. What about the case you brought against Mr. Girardi? That was dismissed. And there was another action brought by Schell, and that has been concluded. So the plaintiffs in the United States, the plaintiffs in the Franco case. What do you mean by concluded? You mean some kind of settlement? No, it was actually a ---- Dismissed? I can ask Schell's counsel to report on the exact status and disposition of that case. All right. This is David Ogden, Your Honor, for Schell. In that case, which is referred to typically as the Franco II case, a case brought by Schell Oil for a declaratory judgment that the judgment was unenforceable, Judge Minella granted summary judgment in Schell Oil's behalf last November, declaring that the judgment was not enforceable against Schell Oil. Are you talking about the case in which you got discovery of the original judgment? That's the case, Your Honor. And during the course of discovering that case, we obtained a copy of the original writ. Summary judgment was granted, and there's been no appeal by the claimant. Thank you. Your Honor, if I may, Rick McKnight again. Perhaps the thrust of your question is, are any of the plaintiffs in the Franco action part of any action that remains alive in the United States? And the answer to that is no. Let me ask this. Is there a – well, if there is, it must be quite lengthy. But is there a statute of limitations on bringing enforcement proceedings, judgment enforcement proceedings? Do you know? In other words, what I'm getting at is, is it still – the possibility is still open that, you know, those cases could be refiled. I think the – I believe, Your Honor, that res judicata as to both Dole Food Company and Schell has now attached. By reason of this case? By reason of these – those two cases. With respect to whether there could be renewed enforcement of that judgment in the United States, I believe that that also now is foreclosed. So there's no – there shouldn't be a limitation. Now, there is another issue that may be implicated by your question. And that is – and it's an interesting thing, Your Honor. This judgment that was rendered in the Franco case in Nicaragua, Mr. Lack has engaged counsel in foreign jurisdictions and asked them to enforce that judgment in, for example, Venezuela. Correct. And so the – and that's going forward, even after the abandonment of this appeal and the acknowledgement that we hear today that, oh, it was bad judgment and they were terribly mistaken. Well, these mistaken lawyers are directing lawyers in other jurisdictions to enforce the same judgment against Dole and Schell. So it isn't dead. There hasn't been a stake driven through it because they persist in enforcing this judgment elsewhere while telling this Court that, mea culpa, we're so sorry. All right.  Thank you, Your Honor. Anybody else have you heard? Mr. Marmorell. Your Honor, I don't want to argue the case, so I'm not going to respond to counsel's comments. I think that's better served for a closing argument. And I don't want to repeat what we put in our status comments report. Just a couple of points. Number one, we strongly believe that the factual record, at least insofar as Mr. Girardi and Girardi and Keith's law firm, is fully developed from our side. We have Mr. Girardi's declaration where he responds to the accusations. We have Mr. Miller's declaration on behalf of the firm. We believe that to the extent there are any factual or legal issues, they are responded to conclusively and fully. And as counsel suggested in his argument, probably counsel has enough to argue his side of the case based on what we've said. That's point one. Point two, Your Honor, there is an aspect of this that prolonging this litigation and creating a whole sideshow of new litigation seems to me to be contrary to the whole spirit of sanctions and sanctions hearings. Sanctions hearings, as the Court knows well, generally occur at the end and they generally involve the factual record that's been developed in the case. And then argument is made. And we submit that's the appropriate course here. There is, of course, the ancillary point about the expense that prolonged litigation would have. The list of proposed opponents, for example, including expert witnesses, smacks of a trial. That's what it sounds like the defendants are looking for. And I respectfully submit, Your Honor, it's not necessary in this case and it's contrary to the spirit of a sanctions hearing. I also think that if the litigation continues and there are further proceedings, the issue of recusal of counsel comes directly into the fore with regard to underlying litigation between these same parties. You got a brief answer from defense counsel. I don't believe my clients subscribe to that answer. If the Court is in any way inclined to have any further proceedings, we would like to file a motion with regard to the recusal point. So we don't believe this counsel or these lawyers should be taking discovery from these lawyers when they are also adversaries. Apart from all that are the thorny issues of attorney-client privilege and of work product that are impacted by defendants' contemplated plan for discovery. My final point, Your Honor, is that with regard to confidentiality, we endorse the Court's comments. We do think that to the extent that this goes forward, and we hope it doesn't in an evidentiary or discovery manner. But to the extent anything occurs in the future, we do believe it should be subject to confidentiality and or protective order. All right. Thank you, Your Honor. Yes. Thank you, Your Honor. David Ogden for Shell Chemical. There are two issues, sets of issues in front of the Court. And I think with respect to discovery, there may be different answers as to the need with respect to those issues. As to the question of sanctions, which turns ultimately on whether the appeal here was a frivolous one, I think generally the Court has plenty of information. That's ultimately an objective test. It turns not on the subjective bad faith of the lawyers. It turns instead on whether the appeal was objectively frivolous. Here we think, and I won't argue it, but there's ample evidence that it was. But for sanctions, Your Honor, it turns on questions of bad faith and recklessness under the applicable legal standards. And ultimately that has to do with the diligence of individual lawyers in carrying out the charge placed upon them by the Court to check facts and not to make factual representations in a reckless or a knowingly false fashion. And ultimately we believe that the Court of the panel has asked you to take this task on because they felt they needed more information than was contained in the record in order to make the individually sensitive judgments about whether a particular lawyer should be sanctioned and to what extent they should based on the question of what information they had, to what extent they participated in decisions, what kinds of information they sought from their Nicaraguan co-counsel, what they did when they heard that information. Because ultimately the question is, why did they make all these false statements? And when it appears fairly obvious that relatively simple questions would have turned up the truth. That is going to require some testing of the thus far entirely self, unavoidably self-serving declarations that have been submitted, which the panel clearly felt weren't sufficient or I believe one can fairly infer felt weren't sufficient to allow them to make the decision that was pending in front of them. It's appropriate to test that. It's appropriate to ask some other questions which they have not been called upon to answer with respect to various decisions. Did they read Judge Minello's opinion saying that the affidavit was suspect? Why did they not try to get hold of the underlying document at that time? Did they read the, have access to the affidavit of the translator which said that he changed the names? If so, why didn't they ask for the real writ at that time and call it to the court's attention? And that question is one that the panel will want to have answered by each lawyer, not simply knowing that somebody acted recklessly, but who did and to what extent. And we think that those questions need to be addressed and a record built on them in order for the Court of Appeals to make a decision on the case. As for the issue of privilege and the related issues that have just been raised, the starting point for inquiry here would be pursuing and following up on statements contained in affidavits that have already been filed here and probing the support for claims that have been made. And obviously to the extent any privilege pertains to those statements, it's long since been waived by the making of them. There may need to be some sensitivity to how these matters get handled, but I think there's no way to respond to the panel's charge to you as the master without inquiring behind those facts. And obviously if there are rulings needed on privilege, they can be made in the normal course. So that's the reason why we believe inquiry here is, unfortunately, is necessary. Thank you, Your Honor. All right. Thank you, Mr. Ogden. Yes, go ahead, Mr. Baker. Briefcase. Bob Baker again, Your Honor. First of all, Your Honor, in the underlying proceedings, the defendants suggest that because of my client's error in judgment, they spent over $250,000 unnecessarily. And yet what they want to do now is to spend much, much more. And they want to try this case and make it a case like an antitrust case. They want to take more depositions than they're entitled to under the federal rules of civil procedure. This, I would suggest, is a search not for the truth, but a search to recuse Mr. Lack and Mr. Girardi's firm from presently being in cases that exist in the superior court against these very same defendants, and they are DBCP cases. I would suggest, Your Honor, that this group that has just addressed you on the other side is anything but a neutral inquirer. And if this is going to be an investigation, we, as I suggested earlier, think that you don't need to do that. I mean, I think it is somewhat speculative to say why the panel sent this matter to you to say that they needed more information. I think that is they wanted your input on it, and they didn't say that you had to obtain more information. What they said, if you think it's necessary. And we think it is not necessary. There's nothing in the proceedings that indicate bad faith, and that's what we're talking about. Not diligence, as my worthy adversary, Mr. Ogden, said. We're talking about bad faith, and there's nothing to indicate bad faith. What they want to do is they want to use the discovery process, interrogatories, experts, and multiple depositions to see if they can find something that they can then argue to you that is bad faith. And, again, I think that this would be a very wasteful use of legal resources to start in a path that has depositions after depositions, and we would be back in some sort of proceeding relative to a disqualification motion of all the panelists that sit to my immediate right, and we would have to rule on that. Then there would be attorney-client work product privileges, and it seems to me that you have enough information to determine whether sanctions should be imposed, and we clearly believe that there is not information that would indicate discipline should be imposed. Thanks so much. All right. Thank you. Nobody else? All right. OK, I'm ready to rule on really the main underlying issue today, and that is one, whether or not we ought to have an evidentiary hearing or whether today's the record to date is sufficient. And if we have an evidentiary hearing, whether discovery should be permitted. It's my ruling that, you know, I'm going to go ahead with an evidentiary hearing. And the reason I go ahead is this. Basically, I think we all, as lawyers, we know the difference between trial by affidavit and trial by live witnesses. And that's the reason, you know, in the old rule in summary judgment, you can't decide contrary issues of fact by affidavit. And primarily it's a case to say, you know, it's awfully difficult to resolve issues of state of mind and intent by declarations. And as Mr. Baker said, the real issue here, I think, is bad faith. The real issue here is state of mind and intent. And it's it's a difficult issue to begin with. I think it's even more difficult to try to, you know, draw those conclusions to make those findings just on the basis of written declarations. So I think to fulfill my obligation, the best way to do it is to hold an evidentiary hearing. And as part of that, I think it's only fair to permit to permit that discovery. So I'm going to permit to discovery the discovery requested here, I suppose. So in this kind of situation. Well, my assumption is this. The discovery that will be limited to the subject matter of this hearing, which is one, whether sanctions should be imposed and whether any discipline is warranted. And to me, that's limited to the conduct of counsel in the judgment enforcement proceeding only, not, you know, what they may have done in other cases or in related cases or are doing now in some other cases. That's my assumption. That being the assumption, I don't think the discovery, although there are a lot of a lot of potential witnesses listed should take a should take very long. The only witness on here that I can't. I don't understand why this witness is on the list. His proposed opponent is Diane Cartman. My understanding is Ms. Cartman wasn't retained until this case started. Is that right? Why would you want to take her deposition? You're on a rhythmic night. We only did that as a precaution if they were going to call her as an expert. Well, in other words, it would be. You mean. All right. Well, first of all, I think on expert witnesses, if you decide you want to, you know, call call an expert witness. I think I don't think I don't I don't think we need to take the deposition of expert witnesses. All right. I think what we should do is this one. I'll follow the fall. The you know, the usual requirement now that you have to submit a timely summary of the expert witnesses report. All right. And qualifications. And then, you know, you can if you want to, you can cross examine the witness at the hearing. I don't think you need to discover expert witnesses. Otherwise, you see, and I think these other witnesses, you know, given the limited nature of the subject matter, the deposition should be lengthy. Now, I assume there'll be issues arising during the course of the discovery that require that might require judicial attention. I'll put it that way. And we'll just have to deal with those as we come along. But given that ruling, the defense is the defendants have laid out, you know, when they're in their status conference report, sort of a timetable. Now, Mr. Ms. Carter, you want to say something? Yes. Thank you so much, Diane. Mr. Carvin, I'm not here as an expert witness. I'm a litigating attorney. And as you well know, it's very unusual to allow a litigating attorney's deposition or testimony to be taken. Oh, you're saying he's not going to take your deposition. Right. Thank you. I just wanted to clarify that. I think that's what I heard. I just wanted to make sure. Unless you want to take issue with that. No, no. I didn't hear it. I didn't. Well, thank you. All right. Now, Mr. Marmorow and Mr. Baker, take a look at the take a look at, you know, the the defendants like sort of their proposed discovery plan starts on page eight of their submission. You see that? Does that look acceptable to you except to, you know, roll back the dates by about a month? And this is hearings now a month later. Something like that or. Yeah. Yeah. All right. Well, obviously, I'm going to permit you file a motion like that, but. I think we should do this. I think in the meantime, we should go ahead. I don't see any reason why we can't go ahead with the first part of the discovery plan. Oh, the document request. Why can't we go ahead with that in the meantime? Because it'll take time to time to do that anyway. And I would like there likely to be objections to some of that. I'm sure anyway. Right. I would suggest that we go forward with written. Because if you look at page two through eight of the proceeding to the same document, you'll see questions. Oh, like, like, for instance, give me an example. Well, just an example of a seven. What was each response? I don't know. But I assume this all refers to the the action that was appealed here. The enforcement. Well, that's a that's a different objection. It may be a work product. I could see some of that would be a work product. But. But I don't think, you know, a work product is protected in a disciplinary proceeding like this. I know it's work practice is, you know, was not absolute. Oh. Well, I think we should go ahead with everything before the taking of depositions. No. Everything except for the taking of depositions of the lawyers of record in this case. How's that? That would be Mr. Girardi, Mr. Lacks, Mr. Miller, whoever else from either firm was. Well, any other attorneys from those firms because the firms themselves were attorneys of record. So but there are a lot of other people on here who are not who are not attorneys of record in any case. Right. Well, why can't their depositions go ahead, such as the notary? Responses to written interrogators impact the same kind of issues, I would suggest. I don't disagree with that. But with regard to responses to the same issues that are impacted in the deposition. And we would like to read your honor, because I think you made a mistake. I'm not saying it's not preserved, but it's not absolute. And I think, you know, when you're inquiring into the motives of an attorney's actions, I think, you know, almost almost by definition, you have to relax the work product rule. That's why I'm I'm just I have to admit, Mr. Baker, I'm just giving you my impression. But, you know, there may be. Certainly, certainly. Virtually every one of the questions is identified here. The counsel brings you that are in our submission relates in one way or another statements made by. Well, let me let me put it this way. We should go go ahead with document discovery and interrogatories and and answers to interrogatories. Now, what the what you can do, Mr. Baker, Mr. Marmorow, is this one. If you think an answer to an interrogatory. Right. It's going to reveal information that would be protected to if you won your motion for disqualification. Right. Now you can reserve your answer on those. How's that? All right. At least on those. I think we have the right to preserve our objections based on attorney work product and attorney client privilege. And you can subsequently rule upon those if you believe we are in error. Not only that, you can raise it with the panel. Thank you very much, Your Honor. Yes. If I could invite counsel who are threatening us with a motion of disqualification to bring that within the next week or two, I think that would accelerate the proceedings enormously. And second, one request I would make with respect to the depositions. And that is there is one of the gentlemen on the list, Walter Gutierrez. He is in the United States. Currently, he's in Los Angeles. Currently, he's in jail. Currently, we would like to subpoena him. We won't take his deposition, but we would like to serve him with process so that we'll be able later on to take his deposition. Is he? I've seen that name before now. What is he? Mr. Gutierrez is. He's not a lawyer from Nicaragua. He is an administrator of the law firm in Nicaragua. And we believe plays an important role in this false notary affidavit. And since we have an opportunity to subject him to process, we would like to do so. We can defer the deposition. All right. Any reason why I shouldn't permit that? All right. The answer is yes. You're you're permitted to go ahead with that now. All right. So a one. I'm going to adopt pretty much this schedule then. Right. Except I'm going to I'm going to on page nine. This is the defendant submission. First of all, we're crossing that crossing out Diane Carpman and we're crossing out any designated experts now. Oh, oh. Then I'm going to set the discovered cutoff date like I don't have a kind of like January 2nd, 15th, 15th is a Monday. January 15th is fine. January 15th, 2007. All right. I think what I'm going to do is this. And I think within within 30 days after January 15th, I think we ought to hold sort of like a final pretrial conference. All right. Where you should come prepared with your witness list, you know, and how much time you think you need to examine witnesses and so forth. And at that hearing, we'll set a date for the evidentiary hearing. All right. So I don't have a calendar, but I'll be around. I'll set up for around mid-February. All right. In Los Angeles at the district court. Mid-February. And then at that hearing. If there are any unresolved issues that have to be addressed, I'll address it then. Now, in the meantime, I'm thinking about an efficient way to do it without a lot of paperwork. But I don't know how. One, let me ask Mr. Baker, Mr. Marmorell, how much how much time do you need to file your motion? Fifteen days. All right. And can we get a response? And well, we can get a response in the like period. All right. Two weeks. And then I'll give you and then I'll give you a week, a week to file a reply. All right. And I think I'll just I'll just take it under submission without all, you know, without all argument that time because I want to move quickly now. So 15, 15 and seven. Oh. I think if you have a if you have a I think I might at least try starting out this way. If you have discovery disputes. You know, one, first of all, I think I think you have to. I want you to follow the, you know, sort of a meet and confer procedure that many districts have. And when I say that, I'm sure you know what I mean. All right. Narrow it to the extent you can. And then I think just submit a short, you know, a real short statement of what the dispute is. You know, you can sort of like you do in the central district. You set down the dispute, you know, and what each side's position is and file that. All right. With the clerk here now, not only file it, but I think just in just in the interest of saving time, because otherwise it could take a while to get to me, mail me a courtesy copy to my chambers in Pasadena. All right. That just or you can fax it to me. Either way is fine. I forgot the mailing address. P.O. Box. I don't want to give it to you. She knows, she knows, she knows where it is. And or you can fax it to me. It's Eric code six to six, two to nine, seven, four, five, seven. All right. And then I'll either rule on the papers if I can. Or if you want argument, you know, I can just hear it on a telephone conference call. All right. Now, since I'm going to do a telephone conference call, I don't have a reporter, you know, unlike a district judge. So if you want to report it, you better have a like a deposition reporter in your office. Right. Or, you know, you two can agree to who's going to do it. So I think we'll we'll handle a discovery dispute that way in the interest of, you know, sort of efficiency and an early ruling. All right. And anything else you could, you know, handle the same way. And then I'll get an order out on our. I'll call it the final pre-hearing conference in mid-February. I don't know what else we have. Anything else we have to do today. Oh, just a minute before Mr. Marlow speaks. I think you ought to try to agree on some kind of a stipulated confidentiality order. All right. For for discovery and maybe further papers file and just proceed. Your Honor, that took care of the first item that I wanted to bring up. The last item is we did not propose any discovery ourselves because we are right. We have a position that wasn't necessary. But you want some. Thank you. I think within the court's order does not preclude us from taking everything. We agree. Yeah. Thank you. All right. Anything else? All right. I don't think of anything else. Right. OK. Then we'll be in a recess. I appreciate all of you coming. I know a number of the council in this in this hearing. And, you know, it's not a it's not a it's not an easy task. But one, I think I've been delegated on just on the 30th. Someone has to do it. So I've been I've been sort of elected. So we'll do the best we can. All right. Then we'll stand in recess. Thank you very much.
judges: Tashima